UNITED STATES of America, Appellee,

v.

Robert Roy MEFFORD, Appellant.

No. 81-1104.

United States Court of Appeals,
Eighth Circuit.

Submitted June 18, 1981.

Decided Sept. 8, 1981.

Thomas K. Berg, U. S. Atty., Thorwald H. Anderson, Jr., Asst. U. S. Atty., Dist. of Minnesota (argued), Minneapolis, Minn., Michel Krug, Legal Intern, for appellee.

Scott F. Tilsen, Asst. Federal Defender, Dist. of Minnesota, Minneapolis, Minn., argued, for appellant.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

ROSS, Circuit Judge.

Appellant, Robert Roy Mefford, was convicted of bank robbery in violation of 18 U.S.C. § 2113(a) and (d) on November 21, 1980. The district court[1] sentenced him to 15 years imprisonment. Mefford appeals alleging that the pretrial identification of the defendant in a photo lineup was erroneously admitted at trial and that the warrantless search of a paper bag was unlawful. We affirm.

*Facts*

On September 16, 1980, at approximately 12:00 noon, a St. Paul, Minnesota, bank was robbed by two armed men, one white and one black. The black man stood in the middle of the lobby pointing his gun at a secretary while the white man entered the tellers' area and took money from the drawers of tellers Lonna Thompson and Dorothy Heimerl. Then the men left the bank.

That afternoon Thompson described the white man to St. Paul police as a 45 to 50 year old man of average height with discolored crooked teeth. Heimerl gave a similar description. Thompson and Heimerl were shown groups of pictures by the police and Thompson identified a picture, not of the defendant, as resembling the white bank robber. Heimerl identified two pictures, again, not of the defendant, as men who resembled the white robber. The following day the tellers were shown a series of 12 photographs of white men. From this photo lineup Thompson and Heimerl identified the defendant. At the time the tellers made their identifications of the defendant they had been informed that suspects had been arrested for the robbery. Both tellers testified that although they were not absolutely positive about their identifications of defendant they were "very sure" (Thompson) and "almost positive" (Heimerl).

On September 16, 1980, at approximately 7:30 p. m., Sergeant Tautges of the Tomah, Wisconsin, Police Department was called to the Greyhound bus station in Tomah to investigate a problem of a disturbance on a bus. Tautges met with the bus driver and a passenger who complained about two men who had been drinking on the bus. Tautges then arrested defendant Mefford and his companions, a black man named McGee and a woman. Tautges searched McGee and Mefford and found two loaded guns on McGee and a small pocket knife on Mefford. The guns were later identified by the bank tellers as the guns used in the bank robbery.

Mefford then asked to return to the bus and retrieve some of his possessions and he was permitted to do so. Mefford came off the bus carrying a brown paper grocery bag. Officer Linenberg, who was with Tautges, took the sack and looked in it and found that it contained a large amount of bills with bank wrappers on them. An interview of the passenger who originally summoned the Tomah police revealed that either Mefford or McGee had fired a shot on the bus. There was some confusion as to whether the police officers learned before or after Mefford retrieved the bag that a shot had been fired, but Sergeant Tautges testified that he knew at the time Mefford went to get the sack that a shot had been fired because at that time another police officer was on the bus looking for the spent cartridge.

As a result of a plea agreement, McGee testified for the government. He testified that he and Mefford, each armed with a gun, had robbed the bank. He testified that they drove to the bus station and drank in a bar until they decided to take a bus to Chicago. McGee testified that Mefford gave him a gun and some money and the two men drank on the bus until they were stopped by police in Wisconsin. McGee also verified that Mefford was the white male depicted in the bank's surveillance photographs taken during the robbery, and that McGee had been the one who fired the shot on the bus.

*Photographic Lineup*

Defendant argues that the pretrial and in-court identifications of the defendant by the two bank tellers were impermissibly

1. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

suggestive and unreliable and thus the identifications should not have been admitted at trial. The defendant's argument is twofold: (1) that the photo lineup was unnecessarily suggestive because the defendant was the only man in the lineup who was within the age range described by the witness Thompson (45 to 50 years old); and (2) that the fact that the witnesses knew at the time they looked at the photospread that suspects had been arrested put unfair pressure on the witnesses to identify someone in the photo lineup thus making the identification unreliable.

▌ An eyewitness identification at trial following a pretrial identification by a photo lineup is impermissible only if the photo lineup was impermissibly suggestive and unreliable. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) the Supreme Court addressed the issue of out-of-court identifications and adopted and applied a two step analysis used by the district court in that case for determining whether an out-of-court identification is admissible in evidence at trial. The first inquiry is "whether the police used an impermissibly suggestive procedure in obtaining" the identification. *Id.* at 107, 97 S.Ct. at 2249. However, evidence of a suggestive confrontation "without more, does not require a holding that the Due Process Clause of the Fourteenth Amendment has been violated." *Harris v. Wyrick*, 644 F.2d 710, 712 (8th Cir. 1981); rather the key inquiry into the admissibility of identification testimony is the reliability of the identification. *Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253. Thus, if the identification procedure was suggestive, the second inquiry is whether, under all the circumstances, the procedure "gave rise to a substantial likelihood of irreparable misidentification." *Id.* at 107, 97 S.Ct. at 2249.

We now apply this analysis to the facts of this case.

Mefford argues that the photo lineup was impermissibly suggestive because he was the only one in the lineup who was within the age range described by the witnesses. Defendant argues that Heimerl testified that of the pictures shown to her all but one or two appeared to be younger than the estimate she gave for the age of the white robber. In *Bivens v. Wyrick*, 640 F.2d 179 (8th Cir. 1981) this court held that an identification based on a photo lineup was not unnecessarily suggestive although defendant was the shortest man in the lineup.[2]

▌ The *Bivens* court cited *United States v. Lewis*, 547 F.2d 1030, 1035 (8th Cir. 1976), *cert. denied*, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977) which found nothing impermissibly suggestive in a lineup where defendant was the shortest of the six men (within a range of about four inches), had a lighter complexion and a more receding hairline than the others. The court held that these differences "were [not] enough to make the identification procedures impermissibly suggestive." *Id.* at 1035. Additionally, in *Lewis*, this court stated that "[p]olice stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required." *Id.* at 1035. We have examined the photo lineup in this case and are convinced that although most of the men in the lineup appeared to be closer in age to 30 than 45 the photospread was not unnecessarily suggestive.

If, however, the photo lineup was suggestive we do not find that it gave rise to a substantial likelihood of irreparable misidentification. The second step in the *Brathwaite* analysis is a determination of the reliability of the identification. The factors to be considered to determine whether a suggestive lineup produced a re-

---

2. The court stated in upholding the identification that:

We have inspected the color photograph of the lineup and find it to be an excellent selection of black men fitting the general description of the robber. Although Bivens was the shortest in stature of the people in the lineup, his height was only an inch or two less than the others.

*Bivens v. Wyrick*, 640 F.2d 179, 180 (8th Cir. 1981) (citations omitted).

liable identification were set out in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and applied by the Supreme Court in *Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

Applying these criteria, we hold that even if the photospread was suggestive the identification was sufficiently reliable as to be admissible.

The tellers observed the bank robbers in a well-lit setting for between 15 seconds and one minute; the witnesses both said they got a good look at the white robber at a distance of about three or four feet as he took money out of their drawers; both tellers gave accurate descriptions of the bank robbers, including height, age, coloring and that the white robber had discolored and crooked teeth; Thompson testified that she was "very sure" she had made a correct identification and Heimerl said that she was "almost positive" that the picture she chose was of the white man who robbed the bank; and the identification of the defendant was made by both tellers only one day after the bank robbery. Thus, all the *Biggers* factors which support reliability of an identification exist in this case.

That the witnesses were informed before selecting defendant's picture from the lineup that the robbery suspects had been arrested does not make the identification unreliable. In *Bivens* this court in upholding the reliability of an out-of-court identification, stated that "[i]t is only natural that victims of a crime asked to view a lineup would suspect it would contain the criminal." *Bivens v. Wyrick, supra*, 640 F.2d at 180. We find that the same reasoning applies to photo lineups and in the absence of evidence that the police coerced or intimidated the witnesses into selecting a photograph from the lineup, the fact that witnesses were informed that a suspect had

been apprehended does not make the identification procedure unreliable. *Id.* at 181. We hold that the trial court correctly admitted the evidence of the pretrial identifications and the in-court identifications by the bank tellers.

*Search of the Paper Bag*

Defendant contends that the warrantless search of the brown paper bag he carried off the bus was a violation of his fourth amendment rights under *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) because the paper bag was the functional equivalent of his suitcase. In *Chadwick* the Supreme Court held that a warrant was required to search a footlocker because "luggage is intended as a repository of personal effects" and thus a person has an expectation that the contents of the luggage will remain hidden from public examination. *Id.* at 13, 97 S.Ct. at 2484. Defendant argues that he was using the paper bag as another person might use luggage and therefore he has the same expectation of privacy as that afforded the defendant in *Chadwick*.

■ Defendant further argues that the search of the paper bag cannot be justified as a search incident to an arrest because once the bag was in the officer's control there was no threat of harm to the officer or that evidence would be destroyed. *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, *reh. den.*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969). We hold that under the facts of this case the defendant did not have a reasonable expectation of privacy protected under *Chadwick* and that the warrantless search of the paper bag was justified as incident to Mefford's arrest.

■ The fourth amendment "protects the privacy and security of persons" in its guarantee of "the right of the people to be secure in their persons, houses, papers, and effects, against *unreasonable* searches and seizures." *Arkansas v. Sanders*, 442 U.S. 753, 757–58, 99 S.Ct. 2586, 2589–90, 61 L.Ed.2d 235 (1979) (emphasis added). The few situations in which a search may be

conducted without a search warrant are "carefully delineated" and the burden is on the government to show a warrantless search was required. *Id.* at 760, 99 S.Ct. at 2591; *United States v. Neumann,* 585 F.2d 355, 359 (8th Cir. 1978). This court has held that a warrant was required for an "on the scene" search of a locked briefcase taken from the hands of the defendant after he was arrested for possession of drugs, *United States v. Schleis,* 582 F.2d 1166 (8th Cir. 1978) and for a search of a locked suitcase taken from the back of a station wagon after the occupants of the car were arrested. *United States v. Stevie,* 582 F.2d 1175 (8th Cir. 1978), *cert. denied,* 443 U.S. 911, 99 S.Ct. 3102, 61 L.Ed.2d 876 (1979). The reasoning in both *Schleis* and *Stevie* was that by placing his possessions in a briefcase or suitcase defendant manifested an expectation that the contents would remain free from public examination and this expectation of privacy was protected by the fourth amendment under *Chadwick.* *United States v. Schleis, supra,* 582 F.2d at 1170; *United States v. Stevie, supra,* 582 F.2d at 1178. We hold that the *Chadwick* warrant requirement does not extend to the facts of this case.

In *United States v. Neumann, supra,* we held that defendant did not have a sufficient expectation of privacy to apply *Chadwick* to an unsealed department store box because the box could easily have fallen open and its contents could have been lost or destroyed. In order to protect the police from allegations of theft and to protect the defendant's property from loss the officers were allowed to search the box without a search warrant. In the present case the bag was "crumpled at the top" and ripped or tattered and contained a white plastic bag as an inner liner. Under these circumstances, because the bag was not sealed and could easily have fallen open and because the bag was tattered and the contents could have been lost or destroyed Mefford did not have a reasonable expectation of privacy in the paper bag.

We recognize that defendant's argument that he was using the bag as another person might use luggage may under certain circumstances have merit. The Supreme Court recently stated that "[w]hat one person may put into a suitcase another may put into a paper bag." *Robbins v. California,* —— U.S. ——, ——, 101 S.Ct. 2841, 2846, 69 L.Ed.2d 744 (1981). In *Robbins,* the Court in dictum said that unless the contents can be inferred from the outward appearance of the container, a closed, opaque container in a car trunk manifests an expectation of privacy protected by *Chadwick.* We do not go so far as to say that a person can never have a reasonable expectation of privacy in a brown paper bag but hold that where, as here, the bag was not sealed with tape, staples or string, was not in a car trunk, and its contents could easily have been lost or destroyed, the defendant did not have a sufficient expectation of privacy to invoke *Chadwick* protection.

The Court in *Chimel* allowed a warrantless search incident to a lawful arrest of "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California, supra,* 395 U.S. at 763, 89 S.Ct. at 2040. Defendant argues that once the bag is in the hands of the arresting officer it is no longer within the defendant's immediate control and thus a search warrant is required under *Chimel.* The Supreme Court recently described defendant's argument as "fallacious" noting that under defendant's interpretation of *Chimel* "no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control.' " *New York v. Belton,* —— U.S. ——, —— n.5, 101 S.Ct. 2860, 2865 n.5, 69 L.Ed.2d 768 (1981). Thus, although the police officer had Mefford's sack in his hands the sack was still within Mefford's immediate control.

The Supreme Court in *Belton* upheld a warrantless search of a jacket, including its zipped pockets, which was found on the back seat of the car in which defendant had

been riding. The Court held that the search was incident to defendant's arrest even though defendant was no longer in the car when the police officer searched the jacket. The Court held that the passenger compartment of a car was within the immediate control of the arrestee under *Chimel* and thus any containers found within that area could be searched.[3] The Court reasoned that a container found in the passenger compartment of a car may be searched

> whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

*Id.* at —, 101 S.Ct. at 2864.

We find the reasoning used by the Supreme Court in *Belton* to be applicable to the facts of the present case. Mefford was under arrest when he came off the bus carrying a paper bag. Because the arrest was lawful[4] and because the bag was within Mefford's immediate control the police officer was justified in searching the bag incident to Mefford's arrest.[5]

As set forth in footnote 3, *Belton* held that any type of container in the passenger compartment of a car can be searched incident to a lawful arrest without regard to the necessity of safety precautions. In light of that holding, it would be inconsistent to say that the search conducted here was unreasonable.

Robert Mefford's bank robbery conviction is accordingly affirmed.

3. The Supreme Court noted that any type of container found in the passenger compartment of the car could be searched including "luggage, boxes, bags, clothing, and the like." *United States v. Belton*, — U.S. —, — n.4, 101 S.Ct. 2860, 2864 n.4, 69 L.Ed.2d 768 (1981).

4. Defendant makes no contention that his arrest was unlawful.

5. Additionally, the Court in *Belton*, citing *United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973), stated:

The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. *United States v. Belton, supra*, — U.S. at —, 101 S.Ct. at 2864.