# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3394

_____

United States of America,

       Appellee,

v.

Jesus Perdoma,

       Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* District of Nebraska.
\*
\*
\*

_____

Submitted: April 16, 2010
Filed:  September 13, 2010

_____

Before BYE, JOHN R. GIBSON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jesus Perdoma was indicted on one count of possession with intent to distribute fifty grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  Perdoma entered a conditional guilty plea under Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of his motion to suppress.  The district court[1] sentenced Perdoma to 120 months' imprisonment.  Perdoma appeals, and for the following reasons, we affirm.

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

## I.     BACKGROUND

On the morning of November 17, 2008, Investigator Alan Eberle of the Nebraska State Patrol ("NSP") was on duty in plain clothes at a Greyhound bus terminal in Omaha, Nebraska. At approximately 6:00 a.m., Investigator Eberle saw a black SUV pull up to the terminal. Jesus Perdoma exited the vehicle carrying a small bag and walked into the terminal without gesturing to the driver of the vehicle. Eberle decided to follow Perdoma into the terminal.

Perdoma walked to the ticket counter and began speaking with an agent while Investigator Eberle watched from four or five feet away. Eberle overheard Perdoma request a one-way ticket to Des Moines, Iowa, using the name Jesus Cruz. When Perdoma retrieved cash from his wallet to pay for the ticket, Eberle saw a government-issued identification card in the wallet, but he could not read the name on the card. According to Eberle, Perdoma's hands were shaking and he appeared nervous throughout the transaction.

Investigator Eberle approached Perdoma as he walked away from the ticket counter. Without touching Perdoma, Eberle identified himself as a police officer and asked Perdoma if he would answer a few questions. Eberle assured Perdoma that he was "not under arrest or in any kind of trouble," and Perdoma agreed to speak with Eberle. In response to Eberle's questions, Perdoma said that he was on his way from Denver to his home in Des Moines and that he had arrived at the terminal by cab.

During the brief conversation, Investigator Eberle smelled the odor of marijuana emanating from Perdoma. Eberle asked to see Perdoma's identification, but Perdoma claimed that he did not have any identification with him. Having already seen a form of government identification in Perdoma's wallet, Eberle then asked to see Perdoma's wallet. As Perdoma reached for his wallet, he was breathing rapidly, trembling, and looking around the terminal. Based on Perdoma's answers, his nervous

behavior, and the smell of marijuana, Investigator Eberle suspected that Perdoma was engaged in criminal activity.

Perdoma paused after taking the wallet out of his pocket. Instead of handing the wallet to Eberle, Perdoma put it back in his pocket and ran. Investigator Eberle ordered him to stop and grabbed his jacket, but Perdoma continued running. After a brief chase, Eberle and NSP Investigator Scott, who was also on duty at the bus terminal that morning, wrestled Perdoma to the ground and placed him under arrest. The officers handcuffed Perdoma and escorted him to an area at the rear of the terminal. Investigator Eberle searched Perdoma and discovered approximately four grams of marijuana in the coin pocket of Perdoma's pants. Meanwhile, Investigator Scott found approximately 454 grams (one pound) of methamphetamine in Perdoma's bag.

A federal grand jury returned an indictment charging Perdoma with one count of possession with intent to distribute fifty grams or more of a substance containing methamphetamine. Perdoma moved to suppress the methamphetamine found in his bag, arguing that his initial encounter with Investigator Eberle was not consensual, that the officers had no basis to detain him, and that the warrantless search of his bag was not a valid search incident to arrest. After conducting a suppression hearing, the magistrate judge[2] recommended denying Perdoma's motion, concluding that Investigator Eberle acted properly in approaching, detaining, and arresting Perdoma. The magistrate judge also recommended upholding the search of Perdoma's bag, because "[t]he right to conduct such a search incident to arrest is absolute." After reviewing Perdoma's objections to the magistrate judge's report and recommendation, the district court rejected the magistrate judge's reasoning that the search incident to arrest exception was absolute and held that, after *Arizona v. Gant*, 556 U.S. ---, 129

_____

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

S. Ct. 1710 (2009), the search incident to arrest exception "cannot legitimize a warrantless search in the absence of a need to protect officers and safeguard evidence." Nevertheless, the district court concluded that the search was valid under *Gant* because, given the discovery of marijuana in Perdoma's pocket, "it was reasonable for the officer to believe the defendant's bag would contain evidence of a drug crime." Accordingly, the district court denied Perdoma's motion to suppress.

## II.    DISCUSSION

"We examine the factual findings underlying the district court's denial of [a] motion to suppress for clear error," *United States v. Williams*, 577 F.3d 878, 880 (8th Cir. 2009) (quoting *United States v. Walsh*, 299 F.3d 729, 730 (8th Cir. 2002)), and we review the district court's "legal conclusions about probable cause and reasonable suspicion de novo," *United States v. Herrera-Gonzalez*, 474 F.3d 1105, 1109 (8th Cir. 2007) (citing *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006)).

Perdoma first argues that his initial encounter with Investigator Eberle was not consensual and that he was therefore unlawfully seized. We disagree. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Id.* (internal citation and quotation marks omitted). Here, Investigator Eberle approached Perdoma and identified himself as a police officer. Without touching Perdoma or displaying a weapon, Eberle told Perdoma that he was not under arrest and asked him if he would answer a few questions. Nothing about this initial encounter would have caused a reasonable person in Perdoma's situation to believe that he was not free to disregard Eberle's questions and walk away. *See United States v. Mendoza-Cepeda*, 250 F.3d 626, 628 (8th Cir. 2001) (concluding that the defendant's encounter with the police was consensual because "only two officers . . . were present, no weapon was

displayed, [the defendant] was not physically touched until after he consented to the touching of his torso, and the language used by [the approaching officer did] not indicate that [the defendant's] compliance was compelled").

Perdoma also argues that Investigator Eberle had no legal basis for arresting him. Again, we disagree. Although the initial encounter was consensual, Eberle had probable cause to arrest Perdoma for marijuana possession once he detected the odor of marijuana emanating from Perdoma.[3] *See United States v. Humphries*, 372 F.3d 653, 659-60 (4th Cir. 2004) (holding that "if an officer smells the odor of marijuana in circumstances where the officer can localize its source to a person, the officer has probable cause to believe that the person has committed or is committing the crime of possession of marijuana" and thus has "authority to arrest him without a warrant in a public place"). Perdoma contends that his possession of less than one ounce of marijuana was merely an "infraction" under Nebraska law, *see* Neb. Rev. Stat. § 28-416(13), and that the arrest was therefore invalid. Whether the offense was an infraction or a misdemeanor is irrelevant, however, because "'if an arrest is otherwise reasonable, the fact that it is not for an "arrestable" offense [under state law] does not make it unconstitutional.'" *See United States v. Burtton*, 599 F.3d 823, 830 (8th Cir. 2010) (quoting *Thomas v. City of Peoria*, 580 F.3d 633, 637 (7th Cir. 2009)) (upholding an arrest for an infraction under Nebraska law); *see also Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they

---

[3]Because an arresting officer's "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," *see United States v. Sledge*, 460 F.3d 963, 967 n.3 (8th Cir. 2006) (quoting *Whren v. United States*, 517 U.S. 806, 813 (1996)), it does not matter that Eberle did not identify marijuana possession as the basis for arresting Perdoma. "The relevant inquiry is whether probable cause existed to arrest [the defendant] for *some crime*, and here we answer that question in the affirmative." *Id.*

desire, state restrictions do not alter the Fourth Amendment's protections."). Because Eberle had probable cause to believe that Perdoma possessed marijuana in violation of Nebraska law, we conclude that the arrest did not violate the Fourth Amendment.

Finally, Perdoma argues that Investigator Scott's warrantless search of his bag was not justified under any exception to the warrant requirement. The Government asserts that the search of the bag was a valid search incident to arrest. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. ---, 129 S. Ct. 1710, 1716 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id.* A search incident to arrest may lawfully extend to "the arrestee's person and the area within his immediate control," that is, "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Chimel v. California*, 395 U.S. 752, 763 (1969) (internal quotation marks omitted). This exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 129 S. Ct. at 1716.

The crux of Perdoma's argument is that during the search, the bag was "beyond his reach" because he was restrained and a police officer had taken control of the bag. Whether an officer has exclusive control of a seized item does not, however, necessarily determine whether the item remains in "the area from within which [the arrestee] *might* gain possession of a weapon or destructible evidence." *Chimel*, 395 U.S. at 763 (emphasis added). Accordingly, we have rejected the notion that an officer's exclusive control of an item necessarily removes the item from the arrestee's area of immediate control. *See United States v. Morales*, 923 F.2d 621, 626-27 (8th Cir. 1991) (rejecting the defendant's argument that the search of his bags, performed while the defendant was held spread-eagled against a wall three feet away by another officer, was improper because the police had gained "exclusive control" over the bags,

explaining that "under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control'" (quoting *New York v. Belton*, 453 U.S. 454, 461-62 n.5 (1981))); *United States v. Mefford*, 658 F.2d 588, 591-93 (8th Cir. 1981) (upholding the search of the defendant's paper bag as a search incident to arrest because the bag remained in the area within the defendant's immediate control even though the arresting officer held the bag during the search); *see also United States v. Tejada*, 524 F.3d 809, 812 (7th Cir. 2008) (noting that the defendant was "unlikely to be able to make a successful lunge for the entertainment center" while he was "[h]andcuffed, lying face down on the floor, and surrounded by the police," but nonetheless holding that the search of the entertainment center incident to arrest was valid because "the police did not know how strong he was, and he seemed desperate"); *United States v. Horne*, 4 F.3d 579, 586-87 (8th Cir. 1993) (upholding a search of furniture that occurred after the defendant and the only other person in the room had been handcuffed, because the arresting officer "could reasonably have believed that weapons were within reach of the hand-cuffed detainees"). Here, the record suggests that the search of the bag occurred in close proximity to where Perdoma was restrained, in the rear area beyond the ticket counter of the bus terminal. Moreover, Perdoma had already run from the officers once, and the officers did not know how strong he was. Under these circumstances, the bag was within "the area into which [the] arrestee might reach in order to grab a weapon or evidentiary items." *Chimel*, 395 U.S. at 763.[4]

Perdoma also couples his references to being restrained and "in custody" with a general citation to *Gant*, in which the Supreme Court held that a warrantless search of a vehicle incident to a recent occupant's arrest is justified only when the arrestee

---

[4]Perdoma also argues that evidence from the search of his person could not justify the contemporaneous search of his bag, and that "[t]he doctrine of inevitable discovery is likewise unavailing." Because we find that the search was justified as a search incident to an arrest, we need not consider those issues.

is "unsecured." 129 S. Ct. at 1719. Reading Perdoma's argument generously, he appears to assert that he was "secured" in the bus terminal during the search of his bag in a matter that calls for application of the *Gant* standard for a warrantless search of a motor vehicle incident to an arrest. While the explanation in *Gant* of the rationale for searches incident to arrest may prove to be instructive outside the vehicle-search context in some cases, we agree with the Government that this is not such a case.

In *Gant*, police officers arrested the defendant at the end of a private driveway after he stepped out of his vehicle, placed him in handcuffs, and locked him in the back seat of a patrol car. *Id.* at 1715. With the defendant thus secured, the officers searched the defendant's vehicle and discovered contraband. *Id.* The Supreme Court ruled that the search-incident-to-arrest exception did not justify the warrantless search of the vehicle. In so doing, the Court rejected the previously "widely understood" rule of *New York v. Belton*, 453 U.S. 454 (1981), that a vehicle search incident to the arrest of a recent occupant is a valid exception to the warrant requirement "even if there is no possibility the arrestee could gain access to the vehicle at the time of the search." *Gant*, 129 S. Ct. at 1718.

In lieu of the rejected *Belton* rule, the Court relied on the general search-incident-to-arrest principles of *Chimel*, under which law enforcement officers may conduct a search incident to arrest "of the arrestee's person and the area within his immediate control," that is, "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." 395 U.S. at 763 (internal quotation marks omitted). Applying these principles in *Gant*, the Court explained that "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply." *Gant*, 129 S. Ct. at 1716. The Court concluded that, in the vehicle-search context, "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 1719.

Perdoma has not meaningfully argued, on appeal or before the district court, how the circumstances of his arrest in a public bus terminal rendered him "secured" and out of reaching distance of his bag in a manner analogous to the circumstances in *Gant*.[5] Therefore, we need not contemplate here to what extent *Gant* has application beyond the context of vehicle searches. *See United States v. Kirkland*, 567 F.3d 316, 322 (7th Cir. 2009) ("[I]t is defense counsel's job to develop suppression arguments

---

[5]Given an opportunity by the district court to file a supplemental brief on the effect of *Gant* on his motion to suppress, Perdoma merely stated that there was no possibility that he could reach the bag because police officers "had taken the bag from him," and stated that *Gant* should be more, not less, relevant outside the vehicle context because of a lesser expectation of privacy in a vehicle. Def.'s Supplemental Br. Supp. Objections Magistrate's Report & Recommendation at 2-3, Clerk's R. at 39-40.

On appeal, the entirety of Perdoma's argument that the search of the bag was not a proper search incident to his arrest consists of the following two statements:

> The officers' warrantless search of Mr. Perdoma's carry-on bag executed after he was restrained and the bag was beyond his reach was unlawful and unjustifiable as a search on any lawful basis.

Br. Appellant at 8.

> The trial court correctly found that that [sic] officers' warrantless search of Mr. Perdoma's carry-on bag was not justified as a search incident to arrest. *Gant v. Arizona* [sic], based on *Chimel v. California*, holds that a search incident to arrest may include only the arrestee's person and the area "within his immediate control", meaning the area from which the arrestee might gain possession of a weapon, or destructible evidence. The moment that Eberle and other officers tackled Mr. Perdoma to the floor, Mr. Perdoma was "in custody." Officers took Mr. Perdoma and his carry-on bag to a rear area of the bus terminal. Because officers took the bag from him, Mr. Perdoma could not gain possession of its contents.

Br. Appellant at 15-16 (internal citations omitted).

in a meaningful way so that the government has an adequate opportunity to respond and the district court to make an informed decision." (citing *United States v. Pope*, 467 F.3d 912, 919 (5th Cir. 2006))), *cert. denied*, 558 U.S. ---, 130 S. Ct. 1120 (2010); *see also United States v. Stanko*, 491 F.3d 408, 415 (8th Cir. 2007) (refusing to address a claim not meaningfully developed on appeal).

The dissent would hold that an arrestee who is restrained in some fashion by law enforcement necessarily is secured (as contemplated by *Gant*) such that a warrantless search incident to arrest of luggage in the arrestee's immediate area can never be justified. *Gant* does not support this logic. After stating the general rule that a warrantless search is not justified "[i]f there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search," 129 S. Ct. at 1716, *Gant* elaborates upon the circumstances in which an arrestee no longer has the possibility to reach into the "passenger compartment" of his vehicle, and the Court's discussion of whether the arrestee is no longer "unsecured and within reaching distance" of that area must be understood in that limited context, *id.* at 1719. The Court focuses exclusively on how the rule will affect *vehicle* searches, stating, for example:

> Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that *a real possibility of access to the arrestee's vehicle* remains. *Cf.* 3 W. LaFave, Search and Seizure § 7.1(c), p. 525 (4th ed. 2004) (hereinafter LaFave) (noting that the availability of protective measures "ensur[es] the nonexistence of circumstances in which the arrestee's *'control' of the car* is in doubt").

*Id.* at 1719 n.4 (emphases added).

The potential pitfalls of the dissent's approach are aptly illustrated by a comparison of *Gant* to the instant case. The defendant in *Gant* parked at the end of a private driveway and was arrested, handcuffed, and locked in the back of a patrol

car before his vehicle was searched. "Under those circumstances, Gant clearly was not within reaching distance of his car at the time of the search." *Id.* at 1719. By contrast, here the record suggests that Perdoma was held in close proximity to his bag while it was searched. *E.g.*, Suppression Hr'g Tr. 38-39 (stating that Perdoma and the bag both immediately were moved to a "back area" or "back room" to the "rear of the ticket counter," and that one officer's spoken question to Perdoma was audible to, and answered by, an officer simultaneously conducting the search of the bag).[6] Given our repeated recognition in the non-vehicle search-incident-to-arrest context that it may be possible for an arrestee restrained in a room to reach items in that room, and without any argument as to why the Supreme Court's reasoning with respect to reaching into a vehicle in *Gant* should control in Perdoma's circumstances, we cannot say that the simple fact of Perdoma's arrest and restraint left Perdoma "clearly . . . not within reaching distance of his [bag] at the time of the search." *Gant*, 129 S. Ct. at 1719.

Having rejected Perdoma's challenges to the search of his bag, we conclude that the search was a valid search incident to arrest. *See Chimel*, 395 U.S. at 763.[7]

---

[6]Moreover, in *Gant*, the only other two individuals in the area already had been secured in separate patrol cars. 129 S. Ct. at 1715. Perdoma's arrest and search occurred in a public bus terminal with at least twenty to thirty other people moving freely inside (Supression Hr'g Tr. at 16), a situation not present in *Gant*.

[7]The dissent makes much of the fact that Perdoma's *Gant* argument was, in part, persuasive to the district court. However, the district court never addressed the core question of whether it was possible for Perdoma to access the bag during the search. Addressing the magistrate judge's ruling that "[t]he right to conduct such a search incident to arrest is absolute and not determinative of any concern for officer safety or destruction of evidence," the district court stated, "[T]he magistrate judge's reliance on the 'search incident to arrest' exception . . . is erroneous and contrary to law. Post-*Gant*, the 'search incident to arrest' exception cannot legitimize a warrantless search in the absence of a need to protect officers and safeguard evidence." Rather than discussing whether Perdoma was able to access the bag during the search, however, the district court instead found the search valid on an alternate ground, concluding that

-11-

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Perdoma's motion to suppress.

BYE, Circuit Judge, dissenting.

I respectfully dissent. I agree with the majority opinion to the extent that the opinion holds the initial encounter between Jesus Perdoma and law enforcement was consensual, and that the officers had a sufficient legal basis to arrest Perdoma. I would nevertheless reverse the district court's denial of Perdoma's motion to suppress because I believe the subsequent warrantless search of Perdoma's luggage was unreasonable.

I

As a threshold matter, I disagree emphatically with the majority's conclusion that Perdoma has waived his right to challenge, in whole or in part, the legality of the

---

the officers could reasonably believe that "further evidence of a drug offense would be found in [Perdoma's] bag." *See Gant*, 129 S. Ct. at 1719 (holding that "circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle'" (quoting *Thornton v. United States*, 541 U.S. 615, 632 (2004) (Scalia, J., concurring))). We read the district court's memorandum and order simply as correctly recognizing that after *Gant*, the magistrate judge's initial ruling that "[t]he right to conduct such a search incident to arrest is absolute" could no longer stand.

We note that because the search of a bag in a bus terminal does not involve "circumstances unique to the vehicle context," the Supreme Court's holding in *Gant* that police may search an arrestee's vehicle for "evidence relevant to the crime of arrest" does not apply to the search of Perdoma's bag, and the district court's ruling on this alternate ground cannot be affirmed. *Gant*, 129 S. Ct. at 1719.

search of his luggage under <u>Arizona v. Gant</u>, 129 S. Ct. 1710 (2009). The issue of whether the search fell within the search incident to arrest exception to the Fourth Amendment warrant requirement was fully litigated at the district court level–indeed, the district court ordered supplemental briefing on the precise issue. After the district court denied Perdoma's motion to suppress, Perdoma entered a conditional guilty plea specifically reserving his right to challenge the search on appeal. Before this court, Perdoma urges us to reverse the district court on the grounds that the search was not legal. Frankly, it is difficult to imagine what more Perdoma could have done to preserve the issue.

The majority appears to ground its conclusion on its assertion that "Perdoma has not meaningfully argued, on appeal or before the district court, how the circumstances of his arrest in a public bus terminal rendered him 'secured' and out of reaching distance of his bag in a manner analogous to the circumstances in *Gant*." Ante at 9. The record indicates otherwise. In his supplemental brief in support of his motion to suppress, Perdoma argued that under the facts of the present case, "[b]ecause officers had taken the bag from him in the bus depot's lobby, *Perdoma could not gain possession* of a weapon or destructible evidence from it." Appellant's Mem. 2 (emphasis added). Addressing another relevant consideration under <u>Gant</u>, Perdoma asserted that he was in police custody because he had been tackled to the floor by several police officers. The same factual points were developed during the suppression hearing on March 3, 2009, where Officer Alan Eberle testified that Perdoma's bag was searched in the presence of three officers *after* Perdoma had been apprehended, placed in handcuffs, and removed from the public terminal. The district court, as I discuss below, ultimately accepted Perdoma's argument that the search of his luggage was not a valid search incident to arrest, putting the majority in the uncomfortable position of asserting that Perdoma failed to make the argument that was not only raised, but in fact carried the day at the district court. On appeal before this court, Perdoma renews the same argument, stating that "[b]ecause officers took the bag from him, *Mr. Perdoma could not gain possession* of its contents." Appellant's Br. 16 (emphasis added).

Ironically, it is the government, by failing to raise the issue of waiver in its brief or at oral argument, that has certainly waived any argument that Perdoma waived his right to challenge the legality of the search. See United States v. Greene, 513 F.3d 904, 906-07 (8th Cir. 2008); Latorre v. United States, 193 F.3d 1035, 1037 n. 1 (8th Cir. 1999) (declining to address whether appellant's appeal was precluded by a waiver provision in the appellant's plea agreement because the government had failed to raise the issue in the district court or in the appeal). By sua sponte making and accepting a waiver argument on the government's behalf, the majority ignores this precedent. I would conclude Perdoma has not waived his right to appeal the legality of the search of his luggage.

## II

Properly raised, the question of whether the search of Perdoma's luggage was reasonable presents a more difficult question.

Under the Fourth Amendment, the "general rule" is that "warrantless searches are presumptively unreasonable." Horton v. California, 496 U.S. 128, 133 (1990). Indeed, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." Id.

In Chimel v. California, 395 U.S. 752 (1969), the Supreme Court recognized the search incident to arrest exception to the warrant requirement. Specifically, the Court held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'–construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." Arizona v. Gant, 129 S. Ct. 1710, 1716 (2009) (quoting Chimel, 395 U.S. at 763). "That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest

-14-

that an arrestee might conceal or destroy." <u>Gant</u>, 129 S. Ct. at 1716 (citing <u>Chimel</u>, 395 U.S. at 763).

In <u>New York v. Belton</u>, 453 U.S. 454 (1981), the Supreme Court applied the holding of <u>Chimel</u> to the automobile context. The Court issued what was then commonly understood to be a bright line rule: when an officer lawfully arrests "the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and any containers therein. <u>Belton</u>, 453 U.S. at 460.

Most courts, including the Eighth Circuit, read <u>Belton</u> as expanding <u>Chimel</u>, thus recognizing a fairly broad power to search incident to arrest. For example, in <u>United States v. Morales</u>, 923 F.2d 621, 626 (8th Cir. 1991), citing <u>Belton</u>, we stated that "[s]ubsequent decisions [to <u>Chimel</u>] of the Supreme Court and this court have interpreted the phrase 'immediate control' to extend beyond the area that is conveniently or easily accessible to the arrestee." Drawing on the analogy to <u>Belton</u>, this court upheld in <u>United States v. Palumbo</u> the actions of officers who searched an area behind a dresser drawer while the arrestee stood handcuffed in the same room. <u>United States v. Palumbo</u>, 735 F.2d 1095, 1097 (8th Cir. 1984). <u>See also</u> <u>United States v. Mefford</u>, 658 F.2d 588, 591-93 (8th Cir. 1981) (although police officer held arrestee's sack, the sack was still within arrestee's area of "immediate control").

Recently, the Supreme Court decided <u>Arizona v. Gant</u>. In <u>Gant</u>, the defendant was arrested in his car, placed in restraints, and then placed in the rear of the police car. <u>Gant</u>, 129 S. Ct. at 1715. Police officers then searched the defendant's car, discovering drugs. <u>Id.</u> The Supreme Court held that the search was not a valid search incident to arrest. <u>Id.</u> at 1719. Specifically, the Court said that the broad rule from <u>Belton</u> must be read in light of the constraints outlined in <u>Chimel</u>:

> To read <u>Belton</u> as authorizing a vehicle search incident to every recent
> occupant's arrest would . . . untether the rule from the justifications

-15-

underlying the Chimel exception—a result clearly incompatible with our statement in Belton that it "in no way alters the fundamental principles established in the Chimel case regarding the basic scope of searches incident to lawful custodial arrests." 453 U.S. at 460, n.3. Accordingly, we reject this reading of Belton and hold that the Chimel rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search.

Id.

Gant held that the search incident to arrest exception applies only in circumstances where the arrestee is unsecured and in reaching distance of the passenger compartment of the vehicle. This case is subject to the same rules, even though it does not involve a vehicle, but rather luggage. While on the surface the majority purports not to address the issue of Gant's applicability outside the vehicle-search context, see ante at 9-10, in substance it goes to great lengths to limit Gant to vehicle searches. Its efforts are unavailing for at least three reasons. For one, all Gant does is return the analysis of the search incident to arrest exception to the familiar moorings of Chimel, a case that did not deal with a vehicle search. Two, it is clear that Gant contemplates that its Chimel-based rationale would apply to non-vehicle searches because the opinion goes through trouble of stating that the other part of its rationale–that based on Thornton v. United States, 541 U.S. 615 (2004)–applies only in "circumstances unique to the vehicle context." Gant, 129 S. Ct. at 1719. And three, we previously have had little trouble concluding that the Belton principles translate into non-vehicle contexts. See, e.g., Palumbo, 735 F.2d at 1097; Mefford, 658 F.2d at 592-93. There is no reason why having done so, we should now circumscribe invalidation of the same Belton principles to a vehicle context only.

In sum, Gant is controlling on the facts of this case. Applying the standard announced in Gant, the district court concluded that under the facts of this case, the search incident to arrest exception did not apply because the search in this case was

not necessary to safeguard evidence or protect officer safety. The district court went on to hold, however, that the search of the bag was reasonable because the search was supported by independent probable cause. But, as the majority correctly recognizes, see ante at 8-9 n.7, the independent probable cause justification for the search advanced by the district court was erroneous. The existence of independent probable cause to search Perdoma's luggage is a red herring in this case. The issue is not whether the police had probable cause to search the bag, but rather whether the police needed to secure a warrant before searching the bag. Luggage, unlike vehicles, is not subject to any independent exception to the warrant requirement. Compare United States v. Chadwick, 433 U.S. 1, 15 (1977) (station house search of two-hundred pound footlocker does not qualify for warrantless search incident to arrest) with California v. Carney, 471 U.S. 386, 388 (1985) (departing from the traditional warrant requirement in the case of vehicles because of the lower expectation of privacy in vehicles and also their unique mobility). Thus, even if the police had independent probable cause to search Perdoma's bag, the search would nevertheless have been constitutionally unreasonable because the search was conducted without a search warrant.

The ultimate issue in this case, then, is whether the district court erred when it concluded that the search of Perdoma's bag was not valid under incident to arrest exception. I would conclude the district court did not err. After Perdoma was subdued, he was handcuffed with his hands behind his back. Two police officers then led Perdoma in handcuffs to the back of the bus terminal away from the public. One of the officers carried Perdoma's bag, a duffel bag zipped shut, to the rear of the terminal; the second officer escorted Perdoma. At the rear of the terminal, a third police officer joined the group. One officer searched Perdoma's person while another officer simultaneously searched Perdoma's bag. Contrary to the majority's assertions, there is no indication on the record that the officers were concerned about Perdoma's strength; indeed, the record is silent as to the relative sizes of the individuals involved in the arrest. Under these facts, I would conclude the district court did not err when it concluded that the search was not authorized under the search incident to arrest

exception. At the time his bag was searched, Perdoma was restrained and unable to access his luggage, which had already been taken from him. Indeed, Perdoma was more restrained than the defendant in <u>Gant</u>. Whereas the defendant in <u>Gant</u> was handcuffed but unsupervised in the back seat of a police car, Perdoma was both handcuffed and being personally searched by another police officer when the search of the luggage occurred. Although the majority correctly points out there may have existed an extremely remote possibility that Perdoma could have broken free, singlehandedly overpowered three police officers, and, while handcuffed behind his back, unzipped his luggage, and gained access to a weapon or evidence, <u>Gant</u> teaches us that such farfetched possibilities do not justify a warrantless search incident to arrest–after all, the same extremely remote possibility existed in <u>Gant</u> as well. <u>See</u> <u>Gant</u>, 129 S. Ct. at 1219 ("Because police could not *reasonably* have believed either that Gant could have accessed his car at the time of the search or that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable.") (emphasis added). The majority, as does this dissent, cites cases decided before <u>Gant</u> approving of searches conducted in factual circumstances similar to this case. But such cases are of limited value, as they may or may not support the same result post-<u>Gant</u>. As discussed above, these cases were decided during a period when this court, among others, used the rationale from <u>Belton</u> to justify broad searches incident to arrest practically untethered to any interest in protecting officer safety or safeguarding evidence.

Because I would conclude the district court did not err when it held the search was not a valid search incident to arrest, I would reverse and remand with instructions to grant Perdoma's motion to suppress.

III

I respectfully dissent.

_____

-18-